UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **C.J. individually and o/b/o A.D,** | : | Hon. Joseph H. Rodriguez |
| *Plaintiffs*, | : | 1:20-cv-04272-JHR-AMD |
| v. | : | OPINION |
| **Willingboro Public School District Board of Education, et al.** | : | |
| *Defendant*. | : | |

This matter is before the Court on the two motions [Dkt. 12, 15] filed by defendants Willingboro Public School District Board of Education ("the District"), Dr. Ronald G. Taylor ("Taylor"), Kimberly Ash ("Ash"), Harold Booker ("Booker"), and Dr. Melody Alegria ("Alegria") (collectively "Defendants") to dismiss Plaintiffs C.J. and A.D.'s (collectively "Plaintiffs") Complaint (the "Complaint") [Dkt. 1].  For the reasons discussed below, the Court will dismiss Defendants' motions as moot and dismiss Plaintiffs' Complaint without prejudice for lack of subject matter jurisdiction.

I.    **Factual Background**

"A.D. is a young woman who attended school in [the District] from 4th–6th grade and then 9th–10th grade."  [Compl. ¶ 3].  C.J. is A.D.'s mother who "has a power of attorney for A.D. for educational matters."  [Compl. ¶ 1].  A.D. has been diagnosed with the following disabilities: hearing impairment in one ear; "adjustment disorder with mixed disturbances, persistent depression, with a history of anxiety."  [Compl. ¶ 4].

Defendants in this case are the school district where A.D. attended school and District employees.  Defendant Taylor is the former Superintendent of Schools for the District.  [Compl.

1

¶ 7]. Ash is the Principal of Willingboro High School [Compl. ¶ 8] and Booker is an Assistant Principal. [Compl. ¶ 11]. Alegria "was the former Director of Special Services at Willingboro High School." [Compl. ¶ 13].

The Complaint alleges that Defendants failed to properly create and implement A.D.'s individualized education program ("IEP") consistent with her disabilities, provide appropriate school accommodations, and protect A.D. from peer harassment. It also alleges that Defendants improperly suspended A.D. from school for behaviors that resulted from these other failures. [Compl. ¶ 24]. With respect to the IEP, the Complaint alleges that A.D.'s IEPs only ever included her hearing impairment even though A.D. was diagnosed with multiple disabilities. As a result, A.D. did not receive services, supports, or accommodations for her other disabilities. [Compl. ¶¶ 23–24]. The Complaint acknowledges that A.D. had behavioral issues at school but alleges that Defendants failed to properly attribute these behaviors to A.D.'s disabilities because Defendants did not incorporate all of A.D.'s disabilities into her IEP. [Compl. ¶ 25]. Relatedly, Defendants did not "have a behavior plan in place" that addressed A.D.'s disabilities. [Compl. ¶ 27].

The Complaint also identifies several instances where A.D. was suspended from school inappropriately due to encounters with peer students. On January 18, 2018, A.D. used her phone to video record a peer and was suspended for four days after an investigation. [Compl. ¶ 29]. According to the Complaint, Alegria, Ash, and Booker "kept A.D. out of school for a few more weeks" beyond these four days while they purportedly tried to schedule a remand hearing. [*Id.*]. C.J. filed a request for emergency relief with an administrative law judge ("ALJ") to have A.D. reinstated. [Dkt. 30–31]. The parties reached a settlement to have A.D. reinstated with a thirty-day loss of privileges, and to have the District provide A.D. with a hallway escort and a

functional behavior assessment.  [Compl. ¶ 31].  The Complaint suggests that the settlement only addressed this emergent issue.

On March 28, 2018, another student instigated a fight with A.D., but Ash, Booker, and Alegria advised that student's parents to file criminal charges against A.D. and suspended A.D. for three weeks.  [Compl. ¶ 32–33].  Plaintiff filed for emergent relief to have A.D. returned to school and an ALJ ruled in A.D.'s favor, finding that the District "did not have a valid reason for keeping her out of school."  [Compl. ¶ 33].  The Complaint suggests that this ruling only addressed A.D.'s March 28, 2018 suspension.

On April 12, 2018, Plaintiff "filed for Due Process" with an ALJ to have A.D. return to school and to compel the District to comply with the terms of the prior settlement, among other things.  [Compl. ¶ 34].  On April 13, 2018, the District filed an administrative request for emergent relief and due process to remove A.D. to an alternative school for forty-five days claiming that A.D. "was a danger to herself and others."  [Compl. ¶ 35].  Plaintiffs answered this request and cross-petitioned for due process.  [Compl. ¶ 36].  An ALJ denied the District's request for emergent relief and ordered the District to "return A.D. back to her stay put placement in an inclusion room with in-class resources…."  [Compl. ¶ 37].  The District withdrew its due process request.  [Compl. ¶ 38].  Plaintiffs' two pending requests for due process were consolidated and the parties settled on June 19, 2019 after the district agreed to include all of A.D.'s disabilities in her IEP.  [Compl. ¶ 40].

In the spring of 2019, C.J. reported to Ash, Booker, and Alegria that a peer student posted a video online stating that the student intended to fight A.D.  [Compl. ¶ 42].  Defendants did not intervene and this student attacked A.D. and her sister.  [Compl. ¶. 42].  A.D. and her sister "got

3

into trouble at school including privileges taken away," while the other student was not punished. [Compl. ¶ 42].

On August 27, 2019, Plaintiffs filed another petition for due process to have the District pay for "independent educational, psychological, functional behavioral assessment, and neuropsychological evaluations." [Compl. ¶ 43]. Plaintiffs did so after paying to have A.D. evaluated by an adolescent psychiatrist, who concluded that "A.D. has an anxiety disorder that is likely related to Post-Traumatic Stress Disorder or at least related to her experiences in school and school difficulties." [Compl. ¶ 44–46].

Plaintiffs filed this Complaint against Defendants alleging that "A.D. was denied s free and appropriate public education ("FAPE") in the Least Restrictive Environment ("LRE") for failure to identify and classify her appropriately to include all of her disabilities, and failure to place her in an educational setting that would meet all of her needs." [Compl. ¶ 48]. The Complaint alleges the following fourteen counts: (I) violation of 29 U.S.C. § 701 et seq., Section 504 of the Rehabilitation Act of 1973; (II) violation of the Americans with Disabilities Act and the Americans with Disabilities Amendment Act ("ADA"); (III) violations of the New Jersey Civil Rights Act and 42 U.S.C. § 1983; (IV) Individuals with Disability Education Act ("IDEA"); (V) prevailing party fees and costs under the IDEA; (VI) violation of the New Jersey Law Against Discrimination ("NJLAD"); (VII) NJLAD hostile learning environment; (VIII) aiding and abetting NJLAD violations;  (IX) vicarious liability; (X) violation of the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 et seq.; (XI) negligence, negligent hiring, and retention; and (XII) negligence and negligent supervision; (XIII) intentional infliction of emotional distress; and (XIV) violations of 42 U.S.C. § 1983, the 14th Amendment, procedural due process, and equal protection rights.

## II.     Procedural History

Plaintiffs filed this case alleging that this Court has federal question jurisdiction under 28 U.S.C. § 1331 to hear this case based on Plaintiffs' federal statutory and constitutional claims. [Compl. ¶ 16].  Defendants filed their first motion to dismiss certain claims from the Complaint on September 23, 2020.  [Dkt. 5].  The Court administratively terminated this case on October 6, 2020 while the parties participated in mediation in a related case before Judge Bumb involving A.D.'s sister.  [Dkt. 6, 7].  The parties did not resolve their dispute in mediation, and Defendants refiled their motion to dismiss on March 19, 2021.  [Dkt. 8, 12].

After Defendants refiled their motion to dismiss, A.D. reached eighteen years of age.  On May 10, 2010, Defendants filed a second motion to dismiss C.J. from the case as an improper party because A.D. is no longer a minor child.  [Dkt. 15].

## III.    Administrative Exhaustion

Before the Court considers Defendants' motions, the Court must first confirm that Plaintiffs have exhausted the administrative remedies available to them under the IDEA and, therefore, that the Court has subject matter jurisdiction over this case.  *S.B. v. Trenton Bd. of Educ.*, No. CIV.A. 13-0949 FLW, 2014 WL 5089716, at *3 (D.N.J. Oct. 9, 2014) ("Exhaustion is required before the [IDEA] grants subject matter jurisdiction to the district court."); *see also J.Q. v. Washington Twp. Sch. Dist.*, 92 F. Supp. 3d 241, 252–53 (D.N.J. 2015) (dismissing Rehabilitation Act and ADA claims for lack of subject matter jurisdiction for failure to exhaust administrative remedies under the IDEA).

Defendants do not contest subject matter jurisdiction for failure to exhaust administrative remedies, presumably because Defendants agreed in a June 2019 settlement agreement between the parties "not to challenge jurisdiction or exhaustion of administrative

5

remedies" in future litigation. [Compl. ¶ 101]. But this agreement not to challenge subject matter jurisdiction cannot confer subject matter jurisdiction on this court where none exists. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004), *as amended* (Feb. 23, 2005) ("'[S]ubject matter jurisdiction cannot be conferred by consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement….'" (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004))). To that end, the Court has "an independent obligation to satisfy [itself] of jurisdiction if it is in doubt," *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 485 (D.N.J. 2018) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)), and "can raise *sua sponte* subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) (italics in original).[1]

### i. Overview of IDEA Administrative Exhaustion

"The IDEA affords parents of a disabled child the opportunity to present a complaint 'with respect to *any* matter *relating* to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child....'" *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 274 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(b)(6)(A)) (emphasis and ellipses in original). Parties suing under the IDEA must first "exhaust the IDEA's administrative remedies before pursuing claims under the IDEA" in federal

---

[1] Parties seeking to dismiss a case for lack of subject matter jurisdiction may raise facial or factual challenges to jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* (citations omitted). Here the Court reviews Plaintiffs' Complaint facially for subject matter jurisdiction without considering extraneous evidence.

court.  *Woodruff v. Hamilton Twp. Pub. Sch.*, No. CV 06-3815(NLH), 2008 WL 11449201, at *6 (D.N.J. Apr. 8, 2008), *aff'd*, 305 F. App'x 833 (3d Cir. 2009).  Section 1415(l) of the IDEA states that

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Reading § 1415(l)'s exhaustion requirement alongside § 1415(b)(6)(A)'s broad application to "*any* matter *relating* to the identification, evaluation, or educational placement of the child," "district courts throughout this Circuit have found non-IDEA actions subject to IDEA exhaustion requirements, where the asserted claims bear relation to the IDEA'S guarantee of a FAPE."  *J.Q.*, 92 F. Supp. 3d at 251 (citations and quotations omitted).  *See also S.D. by A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 121 (3d Cir. 2018) ("IDEA exhaustion requirement applies in instances where, although violations of non-IDEA statutes are pled, the essence of the plaintiff's prayer for relief is the denial of a [FAPE]." (citing *Fry v. Napoleon Cmty. Schs.* ––– U.S. –––, 137 S. Ct. 743, 197 L. Ed. 2d 46 (2017))).  Doing so prevents "'plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA.'"  *Batchelor*, 759 F.3d at 272 (quoting *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996)).  As a result, "claims under Section 504, the ADA, Section 1983, or any state analogue, will

require exhaustion, if such claims seek relief 'available under the IDEA.'" *J.Q.*, 92 F. Supp. 3d at 250 (citations and quotations omitted).

>The IDEA allows any party—the parent of a disabled child or the state—to file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[.]" 20 U.S.C. § 1415(b)(6). The filing of a complaint gives rise to a due process hearing, which is conducted in compliance with state procedures. 20 U.S.C. § 1415(f)(1)[2]… After a hearing, "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1)… Once the [state agency] has issued a decision, the IDEA authorizes **"[a]ny party aggrieved by the findings and decision" to appeal to a federal district court."** 20 U.S.C. § 1415(i)(2)(A).

The Third Circuit has summarized the administrative review process as follows:

*Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd. Of Educ.*, 587 F.3d 176, 182–83 (3d Cir. 2009) (case citations omitted) (emphasis added).  Only parties "aggrieved by" the administrative findings can seek judicial review of those findings.  *See S.B.*, 2014 WL 5089716, at *3.  However, "individuals seeking to enforce a favorable decision obtained at the administrative level are 'aggrieved' for purposes of the IDEA and may properly pursue such claims in court." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 278 (3d Cir. 2014).

Plaintiffs need not exhaust administrative remedies where exhaustion would be "futile or inadequate," where the case presents a purely legal issue, or where the "administrative agency cannot grant relief." *S.B.*, 2014 WL 5089716, at *5 (quoting *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)).  The futility and inadequate relief

---

[2] "In New Jersey, due process hearings are conducted by administrative law judges." *D.A. v. Pleasantville Sch. Dist.*, No. CIV 07-4341(RBK/JS), 2009 WL 972605, at *4 (D.N.J. Apr. 6, 2009) (citing N.J. Admin. Code § 6A:14–2.7(a)).

exceptions apply where plaintiffs "'allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process.'"  *D.A.*, 2009 WL 972605, at *5 (quoting *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996)).

### ii. Analysis of Plaintiffs' Complaint

IDEA exhaustion requirements apply to Plaintiffs' Rehabilitation Act, ADA, § 1983, and Fourteenth Amendment due process claims because these claims "bear relation to the IDEA'S guarantee of a FAPE."  *J.Q.*, 92 F. Supp. 3d at 251.  These theories of liability all concern Defendants' failure to adequately acknowledge, accommodate, or respond to A.D.'s disabilities.  The Rehabilitation Act and ADA claims both allege that A.D. was "excluded from participation in, denied the benefits of and subjected to discrimination" in school."  [Compl. ¶¶ 59, 69].  Further, The Rehabilitation Act claim explicitly invokes Defendants' IDEA obligations.  [Compl. ¶ 61].  *See Batchelor*, 759 F.3d at 274 (finding that Rehabilitation Act and ADA allegations similar to those alleged in the Complaint "palpably 'relate' to the District's provision of FAPE" to the student).  And while Plaintiffs' § 1983 claim alleges that A.D. "was deprived of her substantive rights because she was treated differently due to her disabilities," it also alleges that she was "denied access to a public education and to special education services…."  [Compl. ¶ 85].  Likewise, some of "Plaintiffs' claims are artfully framed as discrimination claims" and civil rights claims, but they ultimately concern Defendants' failure to properly integrate all of A.D.'s disabilities into her IEP and to "act[] appropriately in response to Plaintiffs' request for accommodations to ensure [A.D.'s] right to a FAPE.  Such claims clearly relate to Defendant's obligation to provide a FAPE."  *J.Q.*, 92 F. Supp. 3d at 251 (dismissing ADA, Rehabilitation Act, and NJLAD claims for failure to exhaust IDEA administrative remedies); *see also S.D. by*

9

*A.D.*, 722 F. App'x at 121 (affirming district court's dismissal of complaint alleging violations of § 1983, the First and Fourteenth Amendment for failure to exhaust IDEA administrative remedies). All of Plaintiffs' federal claims "relate to" A.D.'s right to an FAPE under the IDEA and are therefore subject to the IDEA's administrative exhaustion requirements.

The Court must now confirm that the Complaint adequately alleges that Plaintiffs exhausted their administrative remedies. As discussed above, exhaustion requires parties to allege that they presented their claims for administrative review and that they have been "aggrieved" by the administrative "findings and decision." *Chambers*, 587 F.3d at 182–83. It also requires plaintiffs to appeal an adverse finding or decision at the state level before seeking relief in federal court. *Id.* (citing 20 U.S.C. § 1415(g)(1)).

Plaintiffs have not adequately pled administrative exhaustion. The Complaint refers to various due process hearings and administrative reviews [*e.g.* Compl. ¶¶ 31, 35, 37–38, 40–41, 43], but does not allege that Plaintiffs were "aggrieved" by any finding or decision. To the contrary, the Complaint alleges that Plaintiffs succeeded in prior administrative actions and due process hearings. [*E.g.* Compl. ¶¶ 31, 33, 40, 95]. Moreover, the Complaint does not allege that Plaintiffs appealed any adverse findings or decisions as the IDEA requires. *Chambers*, 587 F.3d at 182–83 (citing 20 U.S.C. § 1415(g)(1)). At bottom, Court cannot discern any facts suggesting that an adverse administrative decision has left Plaintiffs "aggrieved."

The Complaint also fails to show that Plaintiffs seek "to enforce a favorable decision obtained at the administrative level." *D.E.*, 765 F.3d at 278. From the face of the Complaint, the Court cannot discern which—if any—findings or decisions from prior administrative hearings Plaintiffs seek to enforce. Plaintiffs allege that they are entitled to IDEA prevailing-party fees as a result of the favorable June 2019 settlement [Compl. ¶ 101] but appear to raise this claim for


the first time here.  The IDEA's prevailing-party provision is not insulated from administrative exhaustion requirements.[3]  *See Patrick B. ex rel. Keshia B. v. Paradise Protectory & Agr. Sch., Inc.*, 858 F. Supp. 2d 427, 431 (M.D. Pa. 2011).

The Complaint also fails to set forth an exception to administrative exhaustion that allows Plaintiffs to sue directly in federal court.  *See S.B.*, 2014 WL 5089716, at *5 (listing exceptions to the IDEA's administrative exhaustion requirement).  The fact that Plaintiffs seek compensatory and punitive damages—which are not available under the IDEA—for their IDEA-related claims does not permit Plaintiffs to circumvent their administrative exhaustion requirements for these other claims.  *See Batchelor*, 759 F.3d at 276–78 (upholding dismissal for failure to exhaust IDEA administrative remedies where plaintiffs sought compensatory and punitive damages under the ADA and Rehabilitation Act).

Ultimately, Plaintiffs' Complaint does not identify adverse administrative rulings for judicial review as IDEA exhaustion requires.  *Batchelor*, 759 F.3d at 275 (noting that

---

[3] "IDEA is silent on whether a Plaintiff must exhaust her administrative remedies prior to seeking fees in district court."  *Wilson v. D.C.*, 777 F. Supp. 2d 123, 126 (D.D.C. 2011).  However, courts have favored exhaustion for prevailing-party awards:

> Permitting routine access to the federal courts as an initial recourse for recovering attorneys' fees for IDEA administrative proceedings would seem unwise, as it would dispense with the administrative expertise, knowledge and familiarity DCPS [District of Columbia Public Schools] should have with IDEA proceedings and with relevant statutory and regulatory provisions (such as fee caps); would increase the risk of inconsistent results when initial determinations are made by various federal judges rather than the responsible administrative agency; and would threaten to clog this federal court with hundreds of individual fee requests, thereby leading to delays in the resolution of such cases and an adverse impact on the administration of justice generally.

*Farrell v. D.C.*, No. CV 09-931 (RMC), 2009 WL 10713456, at *1–2 (D.D.C. Oct. 2, 2009) (quoting *Goldring v. District of Columbia*, Civ. No. 02-1761, *3-4 (D.D.C. Sept. 26, 2003)).

administrative proceedings "carry out congressional intent and provide a means to develop a complete factual record."). Plaintiffs either allege claims for the first time without having presented them for administrative review or fail to allege that they seek to enforce specific findings or decisions from prior administrative proceedings. Either way, the Complaint does not plead facts to satisfy the Court that it has jurisdiction to hear the IDEA-related claims in this case. Even though a facial review of the Complaint for jurisdiction requires the Court to draw inferences in favor of Plaintiffs, Plaintiffs still "bear[] the burden of persuasion" as to jurisdiction. *Henderson v. Nationwide Mut. Ins. Co.*, 169 F. Supp. 2d 365, 367 (E.D. Pa. 2001) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)). Plaintiffs have not carried their burden here.

Because the Complaint alleges federal question jurisdiction under 28 U.S.C. § 1331 and the Court lacks jurisdiction over Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3). And since "'the court lacks jurisdiction to hear the case then a fortiori it [also] lacks jurisdiction to rule on the merits.'" *Kalick v. United States*, 35 F. Supp. 3d 639, 645 (D.N.J. 2014), *aff'd*, 604 F. App'x 108 (3d Cir. 2015) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 896 n.22 (3d Cir. 1977)). Thus, the Court declines to rule on Defendants' motions to dismiss.

## IV. Conclusion

For the reasons discussed above, the Court will dismiss this case without prejudice for lack of subject matter jurisdiction and deny Defendants' motions to dismiss without prejudice as moot.[4] If Plaintiffs file an amended complaint, it must clearly identify facts showing that

---

[4] "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live….'" *Already, LLC v. Nike, Inc.*, 568

Plaintiffs have exhausted their administrative remedies.  An amended pleading must allege that Plaintiffs followed IDEA procedures described above—by filing an administrative complaint and appealing the initial administrative decision—and that Plaintiffs were "aggrieved" at the end of these administrative procedures.  It must specify which administrative rulings or decisions have left Plaintiffs aggrieved.  Alternatively, Plaintiffs must allege facts to show that Defendants have failed to comply with prior administrative rulings and that Plaintiffs now seek to enforce those prior rulings.  Either way, Plaintiffs must clarify which instances of Defendants' misconduct were presented in which administrative proceeding, the outcome of each such proceeding with respect to each instance of misconduct, and the reasons why Plaintiffs are now entitled to judicial review.

August 13, 2021                                                         /s/ Joseph H. Rodriguez

                                                                                  Hon. Joseph H. Rodriguez, USDJ

---

U.S. 85, 91, 133 S. Ct. 721, 726–27, 184 L. Ed. 2d 553 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)).